## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **SHERON JONES** | : **CIVIL ACTION** |
| | : |
| **v.** | : **NO. 16-6393** |
| | : |
| **NANCY A. BERRYHILL,** | : |
| **Acting Commissioner of Social Security** | : |

### MEMORANDUM

**KEARNEY, J.**                                                    **September 20, 2017**

Sheron Jones, on behalf of her ten-year-old son A.C.L., asks we review the Social Security Commissioner's denial of Supplemental Security Income (SSI) benefits for A.C.L. An administrative law judge heard testimony from Ms. Jones and A.C.L., and evaluated the submitted evidence. The ALJ affirmed the Commissioner's denial of his application for SSI benefits finding A.C.L. is not disabled under the Social Security Act.

Ms. Jones makes four arguments to reverse the ALJ's decision. Our scope of review is limited to determining whether the ALJ's decision is supported by substantial evidence. We deny the request for an immediate award of benefits based on this incomplete record. But when, as here, the ALJ fails to explain why she rejected conflicting but probative evidence, did not fully address conflicting medical opinions from the treating doctor or address the proper standard to review Ms. Jones' testimony, we must remand so the ALJ may properly explain why she discounted this evidence. In the accompanying Order, we deny an award of benefits but reverse and remand to allow the ALJ to promptly and fully explain her analysis of the "attending and completing tasks" domain.

## I. Background

Sheron Jones, A.C.L.'s mother, protectively applied for his Supplemental Security Income (SSI) benefits on May 23, 2013 when he was six years old.[1] Ms. Jones claimed A.C.L.'s disability arose from Attention Deficit Hyperactivity Disorder (ADHD), learning disabilities, and speech problems.[2] The Social Security Administration denied A.C.L.'s claim on November 6, 2013.[3] Ms. Jones timely requested a hearing.[4]

Administrative Law Judge Emily R. Statum held a hearing on May 28, 2015.[5] Ms. Jones and A.C.L. testified at the hearing.[6] Following the hearing and after reviewing the evidence in the record, ALJ Statum found A.C.L. had one but not two marked limitations necessary for the disability finding. Specifically, the ALJ found a marked limitation in the domain of "acquiring and using information" but a less than marked limitation in "attending and completing tasks." Ms. Jones now challenges the ALJ's finding of a "less than marked" limitation in "attending and completing tasks."

### A. Judge Statum's review of the testimony.

ALJ Statum described the testimony she reviewed in making her determination.[7]

ALJ Statum summarized Ms. Jones' testimony:

At the hearing, Ms. Jones testified that the claimant is in the second grade, but is still unable to read, doesn't know his numbers or alphabet, and cannot dress himself. She said he is a good student but is unable to retain information. She said the claimant's special education teacher told her that [A.C.L.] does not remember what he has been taught. Ms. Jones Testified the claimant has some friends at school. She said he has recently been prescribed Adderall. ...Ms. Jones said she gives the claimant chores to do at home, but he cries because he does not want to do them. She said his siblings do his homework for him. Ms. Jones testified the claimant has a poor attention span and does not on task. She said he can watch a TV show for only 10 minutes. She said he sees a psychologist. She said he is happy, but is having problems because he is teased by other children.[8]

ALJ Statum summarized A.C.L.'s testimony: "[t]he claimant testified he is in second grade and is getting good grades. He said he likes to play football. He said his medication makes (sic) him a little sleepy. At night, he sometimes stops breathing, and in the morning he feels sleepy."[9]

**B. ALJ Statum's review of records.**

ALJ Statum summarized the records she reviewed in finding A.C.L. did not have an impairment or combination of impairments functionally equivalent to one of the listed impairments.[10]

ALJ Statum reviewed records from A.C.L.'s primary care doctor and found "the claimant's health records reflect concerns, beginning about age 4, over delayed milestones, tantrums, and hyperactive/disruptive behavior. By January 2012, he had been diagnosed with ADHD. He has been prescribed medication for this condition."[11]

ALJ Statum reviewed records supplied by A.C.L.'s treating psychologist, Lori Romano, Ph.D describing them as "[a] May 2013 evaluation report reflected concern about the claimant's ability to retain information. A September 2013 evaluation resulted in a diagnosis of ADHD. The claimant took the Wechsler Intelligence Scale for Children (WISC-IV) test, which resulted in a Full Scale IQ Score of 75.5."[12]

ALJ Statum reviewed a questionnaire completed by A.C.L.'s first grade regular education teacher, Roberta Brotherton, in October 2013 who "indicated the claimant had mostly serious to very serious problems in specific aspects of 'acquiring and using information' and 'attending and completing tasks,' but only slight to serious problems in 'interacting and relating with others' and 'caring for himself' and no problems in the areas of 'moving about and manipulating objects' or "health and physical well-being."[13]

3

ALJ Statum reviewed an October 2013 psycho-educational report completed by A.C.L.'s school psychologist and found "[the] report noted the claimant's inattentiveness but stated that his hyperactivity was not a concern in the classroom."[14] ALJ Statum reviewed a July 2014 school evaluation report which "noted a diagnosis of specific learning disability."[15] ALJ Statum reviewed an October 2014 Individualized Education Program (IEP) report which "noted the claimant was performing below grade level.[16] ALJ Statum also reviewed a letter report from A.C.L.'s special education teacher, Mr. Gordon Smith finding the letter "noted the claimant's eligibility for extended school year services and described his poor ability to retain information from one day to the next."[17] ALJ Statum stated "[t]he claimant's educational records are consistent with the other evidence establishing that the claimant receives special education services and has been determined to have a learning disorder."[18]

ALJ Statum reviewed the report of state agency physician Gerald Gryczko, M.D., and state agency psychologist Paul Perch, EdD.[19] Neither Dr. Gryczko nor Dr. Perch examined or treated A.C.L.[20] Dr. Perch "expressed the opinion that the claimant's impairments resulted in 'marked' limitations in the domain of 'acquiring and using information,' and 'less than marked' limitations in the domains of 'attending and completing tasks,' 'interacting with others,' 'caring for yourself,' and 'health and physical well-being.'"[21] ALJ Statum found "this assessment was a reasonable assessment of the claimant's condition, but I give it only partial weight, as I find the evidence does not support findings of significant limitations in the domains of 'caring for yourself' and health and physical well-being.'"[22]

### C. Judge Statum's analysis.

ALJ Statum found A.C.L. "does not have an impairment or combination of impairments that functionally equals the listings of 20 C.F.R. §§416.924(d), 416.926a."[23] "To functionally equal the listings, the claimant's impairment or combination of impairments must result in 'marked' limitations in two domains of functioning or an 'extreme limitation in one domain (20 CFR 416.926a(d))."[24]

ALJ Statum first found A.C.L. had a "marked limitation" in the domain of "acquiring and using information."[25] "This domain considers how well the claimant is able to acquire or learn information, and how well the claimant uses the information he has learned (20 CFR 416.926a(g))."[26] ALJ Statum cited 20 C.F.R. 416a(h)(3), providing examples of limited functioning in this domain.[27] ALJ Statum noted "the applicability of any listed example may be dependent on the claimant's age and developmental stage and does not necessarily describe a 'marked' or 'extreme' limitation."[28] Examples of limited functioning in this domain include a child who (i) does not demonstrate understanding of words about space, size, or time; (ii) cannot rhyme words or the sound in words; (iii) has difficulty recalling important things he learned in school yesterday; (iv) has difficulty solving mathematics questions or computing arithmetic answers; and (v) only talks in short, simple sentences and has difficulty explaining what he means.[29] ALJ Statum summarized "[A.C.L.]'s IQ testing resulted in borderline IQ scores. On a September 2013 examination, he was oriented as to time, person and place; his memory was intact; and he had a short attention span and a decreased knowledge base. His school functioning is poor and he is behind grade level. Mr. Smith stated that claimant has very poor retention and has difficulty staying focused. His teachers report serious to very serious limitations in this domain.[30]

5

ALJ Statum then found A.C.L. had a "less than marked" limitation in "attending and completing tasks."[31]  "This domain considers how well the claimant is able to focus and maintain attention, and how well he is able to begin, carry through, and finish activities, including the pace at which he performs activities and the ease of changing activities (20 CFR 416.926a(h))."[32]  ALJ Statum cited 20 C.F.R. 416.926a(h)(3), with examples of limited function in the domain of "attending and completing tasks."[33]  ALJ Statum noted "the applicability of any listed example may be dependent on the claimant's age and developmental stage and does not necessarily describe a 'marked' or 'extreme' limitation."[34]  Examples of limited functioning in this domain include (i) a child who is easily started, distracted, or overactive to sounds, sights, movements, or touch; (ii) is slow to focus on, or fail to complete activities of interest (e.g., games or art projects); (iii) repeatedly becomes side-tracked from activities or frequently interrupts others; (iv) is easily frustrated and gives up on tasks, including ones he is capable of completing; and (v) requires extra supervision to remain engaged in an activity.[35]  ALJ Statum concluded the record repeatedly indicates he has difficulty staying on task. Testing resulted in findings of low average ability in processing, verbal comprehension, and perceptual reasoning subtests.  At the initial level of determination, the State agency psychologist expressed the opinion that the claimant's impairments resulted in "less than marked" limitations in this domain.[36]  ALJ Statum cited to the teacher questionnaire completed by Ms. Brotherton, a portion of Dr. Lori Romano's report, and the report of state agency psychologist Paul Perch, EdD.[37]  Dr. Perch never examined nor treated A.C.L.[38]

## II.   Analysis

ALJ Statum held A.C.L. had a "marked" limitation in only one functional domain,

6

"acquiring and using information," and such did not qualify for benefits under the Social Security Act.[39] Having exhausted her administrative remedies, Ms. Jones filed a Petition for Review, challenging ALJ Statum's finding of a "less than marked" limitation in the functional domain of "attending and completing tasks." Ms. Jones argues the finding as to "attending and completing tasks" is not supported by substantial evidence because ALJ Statum: (1) failed to take into account and explain the weight assigned to relevant and probative evidence; (2) failed to explain why she rejected probative evidence which supported a different conclusion; (3) failed to explain why she did not credit the findings of A.C.L.'s treating psychologist; and, (4) failed to explain the weight she accorded to Ms. Jones' testimony.[40]

An ALJ applies a three-step sequential evaluation process to determine if a minor claimant is disabled.[41] At step one, the ALJ must determine whether the claimant is engaged in substantial gainful activity.[42] If the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two.[43] At step two, the ALJ must determine whether the claimant's impairment or combination of impairments is severe.[44] If the claimant's impairments or combination of impairments is severe, the ALJ proceeds to step three.[45] At step three, the ALJ must determine whether the claimant's impairment or combination of impairments matches, is medically equivalent, or functionally equivalent in severity to one of the listed impairments.[46] When a claimant's impairment or combination of impairments is functionally equivalent in severity to a listed impairment and meets the duration requirement, the claimant is considered disabled.[47]

To determine whether a claimant's impairment or combination of impairments is functionally equivalent in severity to one of the listed impairments, an ALJ must determine the level of limitation caused by the impairment(s) across six functional domains.[48] The six functional

7

domains used are (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for yourself; and, (vi) health and physical well-being.[49]   A claimant with "marked" limitations in two functional domains or an "extreme" limitation in one functional domain is considered to have impairments functionally equivalent in severity to a listed impairment.[50]

A "marked" limitation is defined as "more than moderate" and "less than extreme."[51]   A claimant as a "marked" limitation when his "impairment(s) interferes seriously with [his] ability to independently initiate, sustain, or complete activities."[52] For the domain of attending and completing tasks, the ALJ considers how well the child is able to focus and maintain attention, and how well the child begins, carries through, and finishes his activities, including the pace at which the child performs these activities and the ease with which the child changes them.[53] The accompanying regulations to the Social Security Act provide school-age children (ages 6 to attainment of age) should

> Be able to focus your attention in a variety of situations in order to follow directions, remember and organize your school materials, and complete classroom and homework assignments. You should be able to concentrate on details and not make careless mistake in your work (beyond what would be expected in other children your age who do not have impairments). You should be able to change your activities or routines without distracting yourself or others, and stay on task in place when appropriate. You should be able to sustain your attention well enough to participate in group sports, read by yourself, and complete family chores. You should be able to complete a transition task (e.g., be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation.[54]

Examples of limited functioning in the domain of "attending and completing tasks" include a child who (i) is easily startled, distracted, or overreactive to sounds, sights, movements, or touch; (ii) is slow to focus on, or fail to complete activities of interest to you, e.g., games or art projects; (iii)

8

repeatedly becomes sidetracked from his activities or frequently interrupts others; (iv) is easily frustrated and gives up on tasks, including ones he is capable of completing; (v) requires extra supervision to keep him engaged in an activity.[55] These examples do not necessarily describe a "marked" or "extreme" limitation.[56]

We review an ALJ's findings of fact under the deferential "substantial evidence" standard.[57] "We must affirm the ALJ so long as [her] conclusions are supported by substantial evidence."[58] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[59] Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence."[60] "We review the record as a whole to determine whether substantial evidence supports a factual finding."[61]

## A. ALJ Statum erred in failing to explain why she rejected probative, conflicting evidence in "attending and completing tasks."

ALJ Statum found "The record repeatedly indicates he has difficulty staying on task. Testing resulted in findings of low average ability in processing, verbal comprehension, and perceptual reasoning subtests. At the initial level of determination, the State agency psychologist expressed the opinion that the claimant's impairments resulted in "less than marked" limitations in this domain.[62]

Ms. Jones argues ALJ Statum erred by failing to take into account and explain the weight assigned to relevant and probative evidence in finding A.C.L. had a "less than marked" limitation in the domain of "attending and completing tasks."[63]   Ms. Jones also argues ALJ Statum erred by failing to explain her reasons for rejecting probative evidence which would have supported a different conclusion in finding A.C.L. had a "less than marked" limitation in the domain of "attending and completing tasks."[64]

9

ALJ Statum listed the evidence she reviewed in determining A.C.L. had a "less than marked" limitation in the functional domain of attending and completing tasks.[65] With respect to Ms. Jones and A.C.L.'s hearing testimony, ALJ Statum found "[t]he allegations concerning the intensity, duration and limiting effects of these symptoms are generally credible, but the evidence as a whole does not reflect marked and severe limitations."[66] In reviewing the reports of the state physician Gerald Gryczko, M.D., and state's agency psychologist Paul Perch, EdD, ALJ Statum found "they presented a reasonable assessment of claimant's condition, but I give it only partial weight, as I find the evidence does not support findings of significant limitations in the domains of 'caring for yourself' and 'health and physical well-being.'"[67] ALJ Statum does not describe the weight she accorded to other sources of evidence she reviewed in making her determination.[68]

To assure meaningful judicial review, the ALJ must explain clearly and fully the basis of her decision.[69] "We need from the ALJ not only an expression of the evidence [she] considered which supports the result, but also some indication of the evidence which was rejected."[70] There is an especially acute need for some explanation by the ALJ when she rejects relevant evidence or when there is conflicting probative evidence in the record.[71] An ALJ may not reject evidence for no reason or the wrong reason.[72] As such, the ALJ must explain why she rejected probative evidence to allow us to determine whether her rejection is improper.[73] If the ALJ rejects probative conflicting evidence, she must explain why.[74] A single piece of evidence will not satisfy the substantiality test if the ALJ ignores, or fails to resolve a conflict created by, countervailing evidence.[75]

In *Kent v. Schweiker*, an administrative law judge determined the claimant was not disabled, despite evidence from her treating physicians and subjective testimony indicating she

10

was, in fact, disabled within the meaning of the Act.[76] The administrative law judge provided no basis for rejecting the conflicting probative evidence.[77] Finding the judge's decision was not supported by substantial evidence, the court explained "the ALJ did not explain, except in the most conclusory terms and as a function of either his own credibility judgments or his own medical opinion, his rejection of appellant's medical evidence with respect to either her injuries or her complaints of pain."[78] The court further found "in view of the case law, we find it impossible to say that the ALJ's conclusory rejection of [claimant]'s allegations and his determination that [claimant was not disabled] meets the requirements of the substantial-evidence test."[79]

ALJ Statum acknowledges the record "repeatedly indicates" A.C.L. has difficulty staying on task, but refers only to the teacher questionnaire completed by A.C.L.'s regular education teacher, Ms. Brotherton. [80] In the portion of the questionnaire addressing the domain of attending and completing tasks, Ms. Brotherton admitted "it is very difficult to keep [A.C.L.] on task."[81] ALJ Statum does not mention the school district's "psycho educational evaluation report" of A.C.L., for which Ms. Brotherton completed the Conners-3, "an assessment tool used to obtain observations about the behavior of a youth from multiple perspectives."[82] In the area of inattention, Ms. Brotherton "rated [A.C.L.] in the elevated range. Elevated scores indicate that [A.C.L.] has poor concentration and attention and is easily distracted."[83] ALJ Statum does not address A.C.L.'s Individualized Education Program report, which states "[A.C.L.] exhibits difficulty remaining on academic tasks for more than a few seconds at a time. He is the most off task in the regular education setting, with 10 to 15 seconds being the most he can look at a paper without looking away."[84] ALJ Statum also does not address A.C.L.'s special education teacher Gordon Smith, representing "[A.C.L.] has a very difficult time remaining focused on academic

tasks without distraction for even a very short period of time. [A.C.L.] has a very difficult time paying attention in class. The more students, the more distraction [A.C.L] frequently plays with school supplies in his desk while the teacher is giving instructions, and this often earns him a reprimand. He simply cannot stay focused, and often fidgets in his seat, which also calls for reprimands. Instructions must be clear and concise while making eye contact with [A.C.L.] to make sure he is listening."[85]   Mr. Smith also stated "[A.C.L.] is the most impacted student on my caseload."[86]

ALJ Statum does not explain why Ms. Brotherton's questionnaire supports her finding of a "less than marked" limitation in the area of "attending and completing tasks."[87]   A.C.L.'s IEP, the school district's report, and Mr. Smith's letter conflict with the state agency psychologist's opinion of A.C.L. having a "less than marked" limitation in the area of "attending and completing tasks."[88] These records reflect A.C.L. having serious difficulties with respect to his ability to pay attention and concentrate in the classroom.[89] ALJ Statum does not address the IEP, the school district's report, nor Mr. Smith's letter in finding A.C.L. had a "less than marked" limitation in the domain of "attending to and completing tasks," and does not explain these omissions.[90] ALJ Statum fails to explain whether she rejected or simply ignored this conflicting evidence in finding A.C.L had a "less than marked" limitation in the domain of "attending and completing tasks."[91]

ALJ Statum did not attempt to resolve the conflict in these sources of evidence, nor does she explain why she credited the opinion of the state-agency psychologist over the IEP, the school district's report, and Mr. Smith's letter.[92]   ALJ Statum also does not explain why the sources of evidence to which she refers support a finding of a "less than marked" limitation in the area of "attending and completing tasks."[93]

12

Because ALJ Statum failed to explain why the evidence she referenced supported her decision and failed to explain why she rejected conflicting, probative evidence, her decision as to the functional domain of "attending and completing tasks" is not supported by substantial evidence.

## B. ALJ Statum erred in failing to explain why she credited the opinion of the non-examining state-agency psychologist over the opinion of A.C.L.'s treating psychologist.

Ms. Jones argues ALJ Statum erred in crediting the opinion of the state agency psychologist over the opinion of A.C.L.'s treating psychologist, Dr. Lori Romano.[94] In describing the evidence reviewed in rendering her decision, ALJ Statum described Dr. Romano's reports as "[a] May 2013 evaluation report reflected concern about the claimant's poor ability to retain information. A September 2013 evaluation resulted in a diagnosis of ADHD. The claimant took the Wechsler Intelligence Scale for Children (WISC-IV) test, which resulted in a Full Scale IQ Score of 75.5."[95] In finding A.C.L. had a "marked" impairment in "acquiring and using information," ALJ Statum referred to a portion of Dr. Romano's reports by stating "[o]n a September 2013 examination, he was oriented as to time, person and place; his memory as intact; and he had a short attention span and a decreased knowledge base. His school functioning is poor."[96] In finding A.C.L. had a "less than marked" limitation in the domain of "attending and completing tasks," ALJ Statum referred to one additional portion of Dr. Romano's report by stating "[t]esting resulted in findings of low average ability in processing, verbal comprehension, and perceptual reasoning subtests."[97] She also relied on the opinion of state agency psychologist, Paul Perch, EdD., who opined A.C.L.'s impairments resulted in "less than marked" limitations in the domain of "attending and completing tasks."[98]

13

Dr. Romano saw A.C.L. on April 30, 2013 and again on September 19, 2013.[99] During the

April 30, 2013 visit, Ms. Jones completed the Child Behavioral Checklist (CBCL) for ages 6-18.[100]

The CBCL "is an empirically based assessment of behaviors observed in the home and/or at

school."[101] Dr. Romano stated "[r]esults of CBCL indicate elevated scores on scales of anxiety,

social problems, attention problems, learning problems, and somatic problems related to sleep."[102]

Dr. Romano recommended a full psychological evaluation, conducted at the September 19, 2013

visit.[103] Dr. Romano reported:

> On cognitive testing, [A.C.L.] performed in the low average range on verbal comprehension and perceptual reasoning subtests. Processing of wrote information was also in the lower average range when compared to same age (sic) peer. He scored well below average on working memory subtests and his index score fell in the exceptionally low range when compared to children in his same age group. His full scale IQ score was in the borderline range and this score was pulled down due to poorly developed working memory skills. The fact that only two working memory subtests were administered should be taken into consideration however, this pattern of performance is often seen in children with learning problems and attention difficulties.[104]

State agency psychologist Paul Perch, EdD, determined A.C.L. had a "less than marked"

impairment in the domain of "attending and completing tasks."[105] Dr. Perch did not examine

A.C.L. in forming his opinion, but instead reviewed a series of records.[106] In finding A.C.L. had a

"less than marked" limitation in the area of "attending and completing tasks," Dr. Perch observed:

> Hourly problems re paying attention when spoken to directly[,] maintaining focus[,] carrying out single step directions[,] organization[,] task completion[,] disruptive behavior and pace[.] Evaluation Report School Dist Phila 10/28/13[.] By same rater of TCQ: Average Range in Area of Hyperactivity/Impulsivity "This was not an area of concern for his teacher[.]"[107]

"A cardinal principal guiding disability eligibility determinations is that the ALJ accord

treating physicians' reports great weight, especially 'when their opinions reflect expert judgment

14

based on a continuing observation of the patient's condition over a prolonged period of time.'"[108] Where the opinion of a treating physician conflicts with the opinion of a non-treating, non-examining physician, the ALJ may choose which physician to credit, but cannot reject evidence for no reason or the wrong reason.[109] When an ALJ rejects the treating physician's opinion, the ALJ must adequately explain her reasons for doing so.[110]

ALJ Statum fails to address the portions of Dr. Romano's report which state A.C.L. scored well below average on several tests pertaining to attention.[111] She does not indicate the weight accorded to these findings, nor does she indicate whether she rejected or ignored them.[112] Dr. Romano's opinion conflicts with Dr. Perch's opinion of A.C.L. having a "less than marked" limitation in the area of "attending and completing tasks."[113] ALJ Statum does not explain why she credits the opinion of Dr. Perch, a non-treating, non-examining physician, over the opinion of Dr. Romano, A.C.L.'s treating physician.[114] ALJ Statum may not reject the opinion of A.C.L.'s treating physician without an explanation. Because ALJ Statum did not provide a reason for crediting the opinion of a non-treating, non-examining physician over the opinion of A.C.L.'s treating physician, her finding of a "less than marked" limitation in the area of "attending and completing tasks" is not supported by substantial evidence.

## C. ALJ Statum erred in failing to explain why Ms. Jones' hearing testimony does not support a finding of marked and severe functional limitations.

Ms. Jones argues ALJ Statum erred in failing to explain why Ms. Jones' testimony did not support a finding of marked and severe functional limitations, even though she found Ms. Jones' testimony concerning the intensity, duration, and limiting effects of A.C.L.'s symptoms to be generally credible.[115]

At the hearing, Ms. Jones testified A.C.L. cannot stay on task and cannot complete

15

assignments or homework.[116]   Ms. Jones also testified A.C.L. could not read, did not know his

numbers or alphabet, and could not dress himself.[117]   When asked if A.C.L. had friends and if he

got along with children, Ms. Jones testified "his sisters and brothers. The people at his school, they

make fun of him because of the fact that he gives wrong answers and he's not like the average

child."[118]   When asked to describe a typical day in A.C.L.'s life, Ms. Jones testified:

> It's a fighting task in getting him up in the morning because he's really, really tired.
> And then, from there, it's constantly instruction. [A.C.L.], go in the bathroom.
> Let's get washed up. I still wash him up, you know, and sometimes we make a
> mistake and will go in the bed, and I'll have to give him a full-body shower, get him
> dressed, beg him to eat because he doesn't want to eat, and off to school. Most of
> the time the school bus picks him up.[119]

Ms. Jones testified A.C.L. can watch a TV show for "about 10 minutes, if I'm lucky,"

before he loses interest.[120]   Ms. Jones testified A.C.L.'s siblings did his homework for him and he

cried when given chores to do at home, as he did not want to do them.[121]   Ms. Jones also stated

A.C.L.'s special education teacher, Mr. Smith, "tells me that he could teach [A.C.L.] something on

one day and go back to it the next day or the next few minutes, and he doesn't remember it."[122]

Ms. Jones testified a doctor recently prescribed Adderall and A.C.L. treated with a psychologist.[123]

ALJ Statum stated "the allegations concerning the intensity, duration and limiting effects of these

symptoms are generally credible, but the evidence as a whole does not reflect marked and severe

functional limitations."[124]

In the case of an individual under age 18 who is unable to adequately describe his

symptoms, the description of the symptom(s) given by the person who is most familiar with the

individual, such as a parent, will be accepted as a statement of the individual's symptoms.[125]

> It is not sufficient for the adjudicator to make a single, conclusory statement that
> "the individual's allegations have been considered" or that "the allegations are (or
> are not) credible." It is also not enough for the adjudicator simply to recite the

factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.[126]

Although the ALJ may weigh the credibility of the evidence, she must indicate the evidence she rejects and explain why she discounted such evidence.[127] While allegations of pain and other subjective symptoms must be consistent with objective medical evidence, the ALJ must still explain why she is rejecting testimony concerning such symptoms.[128]

ALJ Statum fails to provide specific reasons to support her findings regarding Ms. Jones' credibility.[129] ALJ Statum simply states she finds the testimony is generally credible,[130] which contravenes the directive of Social Security Ruling 96-7. ALJ Statum also does not indicate the weight accorded to Ms. Jones' testimony in finding A.C.L. had a "less than marked" limitation in the area of "attending and completing tasks."[131] ALJ Statum does not refer to this testimony when attempting to explain her finding of a "less than marked" limitation in the domain of "attending and completing tasks."[132] ALJ Statum does not explain determining Ms. Jones' testimony does not support a finding a "marked" limitation in the domain of "attending and completing tasks."[133] ALJ Statum must explain the weight accorded to Ms. Jones' testimony, and why the testimony does not support such a finding. Because ALJ Statum failed to provide this explanation, her determination of a "less than marked" impairment in the domain of "attending and completing tasks" is not supported by substantial evidence.

## III.    Conclusion

ALJ Statum erred by failing to explain why she rejected conflicting probative evidence in the record in finding A.C.L. had a "less than marked" limitation in the area of "attending and

completing tasks." ALJ Statum also erred by failing to explain why she credited the opinion of a non-examining, non-treating physician over the opinion of A.C.L.'s treating psychologist. ALJ Statum erred by failing to explain why Ms. Jones' testimony, while credible, did not support a finding of marked or extreme limitations. Because ALJ Statum's finding of a "less than marked" limitation in the area of "attending and completing tasks" is not supported by substantial evidence, remand is required.

---

[1] Administrative Record, ECF Doc. No. 13 ("R.") 62.

[2] *Id.*

[3] R. 77.

[4] R. 82.

[5] R. 20.

[6] R. 23, 24.

[7] R. 24, 25.

[8] R. 24.

[9] *Id.*

[10] R. 24

[11] *Id.* (citations omitted).

[12] *Id.* (citations omitted).

[13] R. 24, 25. (citations omitted).

[14] *Id.* (citation omitted).

[15] R. 25. The record which ALJ Statum identifies as a July 2014 evaluation report is a report created on October 28, 2013. R. 411. (citation omitted).

[16] R. 25. (citation omitted).

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] R. 62.

[21] R. 25. (citation omitted).

[22] R. 25.

[23] R. 23.

[24] R. 21.

[25] R. 26.

[26] *Id.*

[27] *Id.* (citing to 20 C.F.R. §416.926a(h)(3))

[28] *Id.*

[29] *Id.*

[30] *Id.* (citations omitted).

[31] R. 26, 27.

[32] R. 26.

[33] *Id.*

[34] *Id.*

[35] R. 26, 27.

[36] R. 27. (citations omitted).

[37] *Id.*

19

[38] R. 61.

[39] R. 29.

[40] ECF Doc. No. 18, at 8, 9, 10, 16.

[41] 20 C.F.R. §416.924(a).

[42] *Id.*

[43] *Id.*

[44] *Id.*

[45] *Id.*

[46] *Id.*

[47] 20 C.F.R. 416.924(a) ("If [a claimant] [does] not have such an impairment(s), or if it does not meet the duration requirement, [the ALJ] find that [the claimant] [is] not disabled.").

[48] 20 C.F.R. §416.926a(b).

[49] 20 C.F.R. §416.926a(b)(1).

[50] 20 C.F.R. §416.926a(a).

[51] 20 C.F.R. §416.926a(e)(2)(i).

[52] *Id.*

[53] 20 C.F.R. §416.926a(h).

[54] 20 C.F.R. §416.926a(h)(iv).

[55] 20 C.F.R. 416.926a(h)(3).

[56] *Id.*

[57] *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (quoting 42. U.S.C. §405(g)).

[58] *Id.* (citing *Craigie v. Bowen*, 835 F.2d 56, 57 (3d Cir. 1987)).

[59] *Id.* (quoting *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)).

[60] *Id.* (quoting *Rutherford*, 399 F.3d at 552 (internal quotations omitted)).

[61] *Id.* (citing *Schaudeck v. Comm'r*, 181 F.3d 429, 431 (3d Cir. 1999)).

[62] R. 27 (citations omitted).

[63] ECF Doc. No. 18 at 8.

[64] ECF Doc. No. 18 at 9.

[65] R. 24, 25.

[66] R. 24.

[67] R. 25.

[68] R. 24, 25.

[69] *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

[70] *Id.* at 705.

[71] *Id.* at 706

[72] *Id.*

[73] *Id.* at 707.

[74] *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983).

[75] *Id.* at 105.

[76] *Id.* at 115.

[77] *Id.*

[78] *Id.* at 116.

[79] *Id.*

[80] R. 27.

[81] *Id.*

[82] R. 422.

[83] *Id.*

[84] R. 448.

[85] R. 463.

[86] R. 464.

[87] R. 27.

[88] R. 27, 422, 463, 464.

[89] R. 422, 463, 464.

[90] R. 27.

[91] *Id.*

[92] *Id.*

[93] *Id.*

[94] ECF Doc. No. 18 at 9.

[95] R. 24.   (citations omitted).

[96] R. 26.

[97] R. 27.

[98] *Id.*

[99] R. 305, 337.

[100] R. 306.

[101] *Id.*

[102] *Id.*

[103] R. 306, 337.

[104] R. 341.

[105] R. 67.

[106] R. 63-65.

[107] R. 67, 68.

[108] *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)).

[109] *Id.*

[110] *Fargnoli v. Massanari*, 247 F.3d 34, 43-44 (3d Cir. 2001).

[111] R. 341.

[112] R. 24, 27.

[113] R. 67, 68, 341.

[114] R. 27.

[115] ECF Doc. No. 18 at 16.

[116] R. 51.

[117] R. 24.

[118] R. 42.

[119] R. 43, 44.

[120] R. 52.

[121] R. 24.

[122] R. 45.

[123] R. 24.

[124] R. 24.

[125] Social Security Ruling 96-7p, 61 Fed. Reg. 34482 (July 2, 1996). ALJ Statum relied upon Ruling 96-7p in her June 19, 2015 decision. R. 24. The Social Security Administration superseded this Ruling effective March 16, 2016 when adopting Social Security Ruling 16-3p. *Astachio-Rivera v. Berryhill*, No. 16-1276, 2017 WL 2296976, *9 n. 5 (E.D.Pa. Apr. 12, 2017) *adopted*, No. 16-1276, ECF Doc. No. 18 (E.D.Pa. May 25, 2017). On remand, the ALJ must make findings under Ruling 16-3p. *Webber v. Colvin*, 659 Fed.Appx. 447, 449-450 (9th Cir. 2016).

[126] *Id.*

[127] *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d. Cir. 2000).

[128] *Id.* at 122.

[129] R. 24.

[130] *Id.*

[131] *Id.*

[132] R. 26.

[133] R. 24.